**UNDER SEAL**

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**SOUTHERN**      **DISTRICT OF**      **TEXAS**

UNITED STATES OF AMERICA
V.

*HOANG NGUYEN,*

**(Name and Address of Defendant)**

**CRIMINAL COMPLAINT**

CASE NUMBER: *CRG-05-36-M*

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief. On or about   **11/27/04 & 3/1/05**   In   **Galveston**   county, in the **Southern** District of **Texas** Defendant(s) did, (Track Statutory Language of Offense)

*knowingly import and bring into the United States merchandise, that is, red snapper, contrary to law, in that the red snapper were taken and retained in violation of 50 C.F.R.622.34(l), 622.37(d)(iv) and 622.44(d)(1), and were imported contrary to Title 16, United States Code, Section 1857(1)(G) and 50 C.F.R. 600.725(a). All*

In violation of Title   **18**   United States Code, Section(s)   **545**

I further state that I am a(n)   **Special Agent of NOAA**   and that this complaint is based on
<span style="font-size:smaller">Official Title</span>

the following facts:   *See Attachment A hereto, Affidavit of Special Agent Cook.*

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Complainant

**Sworn to before me and subscribed in my presence,**

__October 12, 2005_____    at    **Houston, Texas**
Date                                                City and State

*John R. Froeschner*
*United States Magistrate Judge*                                      _____
Name & Title of Judicial Officer                                  Signature of Judicial Officer

## ATTACHMENT A

## AFFIDAVIT

I, Richard R. Cook, a Special Agent of the United States Department of Commerce (USDOC), National Oceanic and Atmospheric Administration (NOAA), Office for Law Enforcement (OLE), being duly sworn, do depose and say as follows:

1.      I began a federal law enforcement career in 1996 with the United States Department of Justice, Immigration and Naturalization Service, as an Immigration Inspector, and have been employed by the NOAA OLE since 1998. I am currently assigned to the Galveston, Texas Field Office. I graduated from Tarleton State University in Stephenville, Texas in 1994 and earned a Bachelor of Science degree in criminal justice with a minor course of study in psychology. My duties as an agent with NOAA OLE involve enforcement of a variety of laws including the provisions of the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson Act), 16 U.S.C. §§ 1801 *et seq.*, which was enacted to conserve and manage the fishery resources found off the coasts of the United States, within the Exclusive Economic Zone (EEZ), as well as the provisions of the Lacey Act Amendments of 1981 (Lacey Act), 16 U.S.C. § 3371 *et seq.* and I am authorized, when enforcing the Lacey Act, to make an arrest for the commission of any felony under the laws of the United States when I have reasonable cause to believe that the person to be arrested has committed a felony offense.

2.      This affidavit is submitted in support of an application for a criminal complaint and arrest warrant charging HOANG NGUYEN with smuggling (fraudulently or knowingly importing or bringing into the United States, any merchandise contrary to law, or receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law) in violation of 18 U.S.C. § 545. There is probable cause to believe that HOANG NGUYEN has committed a violation of 18 U.S.C. § 545 as outlined below.

3.      The information contained in this affidavit is based upon my own personal knowledge, experience, and background, as well as upon information, reports, and documents provided to me by witnesses and other law enforcement personnel. As this affidavit is submitted solely for the purpose of establishing probable cause, it does not contain all of the information known by me or by other Special Agents involved in this investigation.

4.      As a result of over-fishing, red snapper stocks in the Gulf of Mexico are regulated by vessel permits, seasons, trip (bag) limits, and size limits as delineated in regulations accompanying the Magnuson Act. Federally permitted commercial fishing vessels, of which there are a very limited amount, are only allowed to take red snapper from federal waters during an open season, usually beginning at noon on the first day of each month and ending at noon on the tenth day of each month until the commercial red snapper

quota is reached. Also according to federal regulations, each vessel is only allowed to take a maximum limit of two thousand (2,000) pounds of red snapper per trip and each fish must have a minimum length measurement of fifteen (15) inches.

In addition, each vessel is required to report the amount of fish landed for each trip to the National Marine Fisheries Service (NMFS), a federal agency. This information is collected by the NMFS and utilized by the United States Government to manage red snapper stocks in the Gulf of Mexico. When red snapper is taken in violation of law, this data is usually not reported to the NMFS. This failure to report greatly impacts when fishing seasons are opened or closed and ultimately damages the resource.

5.   On November 27, 2004 and March 1, 2005, HOANG NGUYEN was the captain/master of the fishing vessel THANH TAM (F/V THANH TAM). The F/V THANH TAM is a fifty-one (51) foot, United States flagged, federally permitted commercial fishing vessel which operated out of Port Bolivar, Texas. The F/V THANH TAM possessed a federal fisheries permit for Gulf of Mexico reef fish and a Class 1 red snapper federal fisheries license.

6.   On November 27, 2004, at a time during which the federal red snapper season was closed, NOAA OLE Special Agents were notified, by a Houston, Texas-based seafood dealer, that a commercial quantity (1,919 pounds) of red snapper was being offered for sale to the dealer. At the time, it was illegal to possess such a quantity of red snapper. The shipment was transported to the seafood dealer in a 1993 tan Ford van which was registered to HOANG NGUYEN. NOAA Special Agents spoke with the two individuals who arrived at the seafood dealer with the red snapper. The individuals stated that they were crewmembers of the F/V THANH TAM and that the fish originated from the F/V THANH TAM which had returned to dock shortly after midnight on the 27th after a week-long fishing trip. In addition, both individuals stated that NGUYEN instructed the two crewmembers to deliver the red snapper to the Houston seafood dealer. The proceeds from the sale were to be returned to NGUYEN. Both individuals stated that they, including NGUYEN, had taken the red snapper during a commercial fishing trip onboard the F/V THANH TAM. They indicated the area from where the fish were taken to be 80 to 100 nautical miles offshore [within the (EEZ)].

7.   On November 30, 2004, NGUYEN was interviewed by NOAA Special Agents at the Galveston, Texas Field Office. NGUYEN stated that he was the captain of the F/V THANH TAM for the trip ending on November 27, 2004 and identified one of the two individuals who transported the red snapper to the Houston seafood dealer on November 27, 2004 as one of his crewmembers. In addition, NGUYEN confirmed that the van, utilized on November 27, 2004 to transport the red snapper, belonged to him and claimed that he had loaned the van to his crewmember. NGUYEN indicated that he was aware that the red snapper season began on the first of the month and ended on the tenth of the month. Although NGUYEN denied taking any illegal fish, he confirmed that his last fishing trip lasted approximately ten days and concluded sometime after midnight on November 27, 2004.

8. The identity of the second of the two individuals who arrived at the Houston seafood dealer on November 27, 2004 was confirmed by the owner of the wholesale Port Bolivar seafood dealership to which the F/V THANH TAM routinely sold fish. The owner confirmed that the second of the two individuals was also a crewmember of the F/V THANH TAM.

9. On March 1, 2005, NOAA OLE Special Agent (SA) Charles Tyer along with Texas Parks and Wildlife Department (TPW) Game Wardens, boarded the F/V THANH TAM as it was returning to dock in Port Bolivar from a fishing trip. NGUYEN said he didn't speak English and requested that a crewmember translate. NGUYEN was questioned regarding his catch from the trip. NGUYEN presented a commercial quantity of fish which was located in the vessel's main fish hold. NGUYEN indicated there were no more fish anywhere onboard the vessel. It was subsequently discovered that the main fish hold actually contained 2,077 pounds of red snapper, among other fish, which was in excess of the 2,000 pound trip limit.

10. SA Tyer inspected other areas of the F/V THANH TAM where fish may have been stored and took measurements of the vessel's rear deck area. The measurements revealed a space, which was unaccounted for, located underneath a blue plywood box hard-mounted on the vessel's rear deck. SA Tyer showed NGUYEN the location of the area and specifically asked him for what the area was used. NGUYEN indicated that the area was used only for a supply of fresh water. SA Tyer specifically asked if there were fish stored there and NGUYEN responded with "No." SA Tyer offered several opportunities to NGUYEN to amend his declaration regarding any additional fish being located onboard the vessel and NGUYEN declared there were no other fish onboard the vessel.

11. After removing several items of fishing gear and equipment from the blue plywood box located at the vessel's stern, SA Tyer discovered a plywood door secured by several stainless steel screws. An additional door leading toward the bottom of the vessel was discovered upon removal of the screws. After this second door was removed, a hidden, custom-built, insulated fish compartment was revealed. Inside the hidden compartment was approximately 5,641 pounds of red snapper. Approximately 3,493 pounds (2,726 individual fish) or 62 percent of the fish within the hidden compartment were beneath the legal size limit of fifteen inches. NGUYEN had taken approximately four times the amount of red snapper allowed by federal law, most of which were concealed inside a hidden compartment and a majority of which were under the legal size requirement.

12. Subsequent interviews of NGUYEN and the F/V Thanh Tam's crewmembers resulted in written statements regarding the incident. NGUYEN signed a statement declaring that the fish were taken inside the EEZ, that he had taken over the lawful limit of red snapper, many of which were under the legal size limit, and that he had placed the fish inside a hidden compartment in order to conceal the illegal fish from law enforcement authorities, in violation of federal law.

13.   Thus, investigation has revealed that on November 27, 2004, NGUYEN imported and
      brought into the United States, red snapper which were taken in the EEZ while the federal
      red snapper commercial fishing season was closed, and which were imported contrary to
      the Magnuson Act, 16 U.S.C. § 1857(1)(g) and its accompanying regulation, 50 C.F.R.
      § 600.725(a).  NGUYEN also facilitated the subsequent transportation and sale of the red
      snapper which was imported contrary to law.

14.   The investigation has further revealed that on March 1, 2005, NGUYEN imported and
      brought into the United States more than 2,000 pounds of undersized red snapper which
      were taken in the EEZ while the federal red snapper commercial fishing season was
      closed, and which were imported contrary to the Magnuson Act, 16 U.S.C. § 1857(1)(g)
      and its accompanying regulation, 50 C.F.R. § 600.725(a).  NGUYEN also facilitated the
      concealment of the red snapper which were imported contrary to law.

_____
Richard R. Cook
Special Agent / NOAA - OLE


Subscribed and sworn to before me the 12th day of October, 2005.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE